UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
DONALD S. HUNTER, SR.,                  )
                                        )
        Plaintiff,                      )
                                        )
    v.                                  )        Civil Action No. 04-0857 (PLF)
                                        )
CONDOLEEZA RICE, Secretary,             )
United States Department of State,      )
                                        )
        Defendant.                      )
_____ )

OPINION

    This matter is before the Court on defendant's motion for summary judgment

pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1]  Plaintiff Donald S. Hunter, Sr.

alleges that he was the subject of race and sex discrimination by his employer in violation of

_____

[1]      The briefs submitted in connection with this motion include: Defendant's Motion
for Summary Judgment ("Def. Mot."); Plaintiff's Memorandum of Points and Authorities in
Opposition to Defendant's Motion for Summary Judgment ("Pl. Opp."); and Defendant's Reply
in Support of Motion for Summary Judgment ("Def. Rep.").

         The depositions and declarations which the Court references include: Exhs. A, K,
X (Deposition of Donald S. Hunter, Sr.,Volumes 1, 2, and 3 or "Pl. Depo. I, II, and III") to Def.
Mot and Exh. 10b* to Pl. Opp.; Exh. EE (EEO Declaration of Benjamin Castro or "Castro
Decl.") to Def. Mot.; Exh. F (EEO Declaration of Fannie Allen or "Allen Decl.") to Def. Mot.;
Exh. U (Declaration of Margaret A. Ahern or "Ahern Decl.") to Def. Mot.; Exh. 2 (Declaration
of Joyce Love or "Love Decl.") to Pl. Opp.; Exh. 7 (Declaration of Connie Stinson or "Stinson
Decl.") to Pl. Opp.; Exh. 8 (Deposition of Fannie Allen or "Allen Depo.") to Pl. Opp.; Exh. 12
(Appraisal Review of Donald S. Hunter, Sr.) to Pl. Opp.; Exh. 15 (Affidavit of Donald S. Hunter,
Sr. or "Pl. Aff.") to Pl. Opp.

         * Although Exh. A and Exh. 10b both refer to plaintiff's July 6, 2005 deposition,
this Opinion will cite only to Exh. A to avoid confusion.

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq* ("Title VII").  In

addition, plaintiff alleges that he was the victim of a violation of the Equal Pay Act of 1963, 29

U.S.C. § 206(d).  Upon consideration of the motion, opposition, reply, and the entire record in

this case, the Court will transfer plaintiff's Equal Pay Act claim to the United States Court of

Federal Claims, which has exclusive jurisdiction over it.  In addition, the Court will grant

defendant's motion for summary judgment on plaintiff's Title VII claims.

## I.  BACKGROUND

Plaintiff Donald S. Hunter, Sr., an African-American male, is a GS-12 Grants

Specialist in the Grants Division of the Bureau of Educational and Cultural Affairs ("ECA")

within the United States Department of State.  See Complaint ("Compl.") at 4.  Plaintiff joined

the organization as a GS-4 supply clerk in February 1986 and has since received several

promotions.  See Defendant's Statement of Material Facts Not in Genuine Dispute ("SMF")

¶¶ 1-8, attached to Defendant's Motion.  Grants Specialists are responsible for evaluating grant

proposals, drafting assistance agreements, and monitoring the performance and reporting of

recipient organizations, among other tasks.  See id.  ¶ 21.

Fannie Allen, an African-American female, is a Grants Management Officer

(GS-14) and plaintiff's supervisor.  See Compl. at 4.  Ms. Allen oversees a staff of ten

employees, consisting of nine women and plaintiff.  See id.  Connie Stinson, an African-

American female, is one of the GS-13 Grants Specialists that Ms. Allen supervises and is

plaintiff's team leader.  See SMF ¶¶ 23-24.  While Ms. Stinson is primarily responsible for

reviewing plaintiff's completed work, Mr. Hunter works directly with Ms. Allen on any special projects that she assigns to him.  See id. ¶¶ 24-25.

Pursuant to Ms. Allen's recommendation, plaintiff received an accretion of duties promotion to the GS-12 level on November 7, 1999.  See SMF ¶¶ 31-34.  Between 2000 and 2002, Ms. Allen had several conversations with plaintiff discussing how he could enhance his skills to obtain a promotion to the GS-13 level.  See id. ¶ 35.  Upon Ms. Allen's suggestion that plaintiff needed to manage a program, Mr. Hunter requested and received an assignment to manage the Wye River Project.  See id.  In addition, Ms. Allen stressed that plaintiff needed to improve his oral and written communications skills and gave him specific recommendations on how he could improve these skills.  See id. ¶ 36.  Specifically, she suggested that he take a course at Prince George's Community College in basic English, take an internal agency course on public writing, participate in Toastmasters, and use a device to help him practice pronouncing words.  See id.  Plaintiff followed Ms. Allen's recommendations.  See id.

On October 1, 2001, plaintiff met with Ms. Allen and told her that he believed that he deserved an accretion of duties promotion because he was performing at the GS-13 level.  See SMF ¶ 37.  At the time, plaintiff had held his GS-12 position for less than 23 months.  See id.  Ms. Allen informed Mr. Hunter that she did not feel that he was ready for the GS-13 position.  See id. ¶ 39.  She later asserted in a sworn declaration that she declined to grant plaintiff's request because he lacked the experience to work independently on complex activities without significant coaching, and because his written and oral communication skills needed improvement.  See Allen Decl. at 4:25 - 4:29.  Ms. Allen, however, did inform plaintiff that he could take his request to her direct supervisor, Benjamin Castro, the Deputy Director of ECA's

Executive Office.  See SMF ¶ 40.  Mr. Castro affirmed Ms. Allen's decision and explained that while plaintiff was an excellent performer at the GS-12 level, he was not yet ready for a promotion.  See id. ¶ 42.  Plaintiff filed a classification appeal to challenge Mr. Castro's decision, but ultimately withdrew his appeal.  See id. ¶¶ 43, 48.

On February 28, 2002, plaintiff sent an e-mail to Ms. Allen requesting an increase in authority to sign grant and cooperative agreements from his current level of $100,000 to a range between $500,000 - $1,000,000.  See SMF ¶ 71.  Ms. Allen did not grant the increase immediately.  See id. ¶ 73.  She eventually recommended an increase to $500,000, however, which was approved in May 2003.  See id. ¶ 75.  Ms. Allen asserted in a sworn declaration that she delayed recommending plaintiff for the increase based on reports from Ms. Stinson that plaintiff did not exercise care in processing grant awards and repeatedly made errors in processing.  See Allen Decl. at 10:4 - 10:8.

Plaintiff alleges that defendant violated the Equal Pay Act.  See Compl. at 1.  In addition, plaintiff contends that the defendant discriminated against him on the basis of his race (African-American) and his sex (male) by: (1) failing to grant him an increase in signing authority on grants and cooperative agreements from $100,000 to $1,000,000 on May 30, 2002; (2) denying his request for an accretion of duties promotion to the GS-13 level on June 24, 2002; and (3) refusing to competitively select him for a GS-14 Financial Management Specialist position on May 14, 2002.  See id; see also Def. Mot. at 2 n.1.

## II.  DISCUSSION

### A.  Summary Judgment Standard

Summary judgment should be granted if the pleadings, depositions, answers to interrogatories, admissions on file and affidavits or declarations show that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  Material facts are those "that might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 255; see also Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc).  The court must "eschew making credibility determinations or weighing the evidence."  Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).

The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations or other competent evidence setting forth specific facts showing that there is a genuine issue for trial.  See FED. R.CIV. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in his favor. Laningham v. U.S. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987).  If the evidence is "merely colorable" or "not significantly probative", summary judgment may be granted.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50.  To defeat summary judgment, a plaintiff must produce more than "a scintilla of evidence to support his claims."  Freedman v. MCI Telecomm. Corp.,

255 F.3d 840, 845 (D.C. Cir. 2001).  In an employment discrimination case, "[u]sually, proffering evidence from which a jury could find that the employer's stated reasons were pretextual will be enough to get a plaintiff's claim to a jury."  George v. Leavitt, 407 F.3d 405, 413 (D.C. Cir. 2005) (internal quotations omitted) (citing Carpenter v. Fed. Nat'l Mortgage Ass'n, 165 F.3d 69, 72 (D.C. Cir. 1999).

### B.  Statement of Material Facts

The Local Civil Rules of this Court require a motion for summary judgment to be "accompanied by a statement of material facts as to which the moving party contends there is no genuine dispute," and any opposition brief must include "a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated[.]"  LCvR 7(h); see also LCvR 56.1 (same).  Either form of statement "shall include references to the parts of the record relied on to support the statement."  Id.  In ruling on the motion for summary judgment, "the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."  Id.; see also Arrington v. United States, 473 F.3d 329, 335 (D.C. Cir. 2006).

The purpose of the Local Rule is to "[isolate] the facts that the parties assert are material, [distinguish] disputed from undisputed facts, and [identify] the pertinent parts of the record."  Burke v. Gould, 286 F.3d 513, 517 (D.C. Cir. 2002) (quoting Gardels v. Central Intelligence Agency, 637 F.2d 770, 773 (D.C. Cir. 1980)).  When a statement by a non-movant purports to specify genuine factual issues but does not "set forth specific, material facts, [and]

simply [asserts], without citing evidence in the record, that there [is] a disputed issue," it fails to comply with the Local Rule. Burke v. Gould, 286 F.3d at 518. When a non-moving party fails to comply with Local Rule 7(h), the Court may assume that the facts identified by the moving party are admitted. See LCvR 7(h); Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner, 101 F.3d 145, 154 (D.C. Cir. 1996). The Court is not obligated "to sift and sort through the record, that is, engage in time-consuming labor that is meant to be avoided through the parties' observance of [the Rule]." Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner, 101 F.3d at 153; see also Burke v. Gould, 286 F.3d at 518.

In his opposition brief, plaintiff states that he "disputes all material facts" and provides a CD with several documents. This assertion, however, cannot be deemed the equivalent of a Rule 7(h) or Rule 56.1 statement. The Statement of Facts in plaintiff's opposition brief is no more than a recitation of the factual allegations in his Complaint. Compare Pl. Opp. at 3-4 with Compl. at 4-5. It does not isolate the facts that the parties assert are material, distinguish disputed from undisputed facts, and identify the pertinent parts of the record. See Burke v. Gould, 286 F.3d at 517. This "Statement of Facts" within plaintiff's opposition brief fails to comply with the Local Rules.

As noted above, where the moving party's factual assertions in its Local Rule 7(h) statement are uncontroverted, the Court may consider these facts as admitted. See LCvR 7(h); LCvR 56.1; Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner, 101 F.3d at 154; Burke v. Gould, 286 F.3d at 518; Glovinsky v. Cohn, 983 F.Supp. 1, 2 (D.D.C. 1997). Furthermore, Rule 56(e) of the Federal Rules of Civil Procedure explicitly states:

> When a motion for summary judgment is made and supported as
> provided in this rule, an adverse party may not rest upon the mere
> allegations or denials of the adverse party's pleading, but the adverse
> party's response, by affidavits or as otherwise provided in this rule,
> must set forth specific facts showing that there is a genuine issue for
> trial. If the adverse party does not so respond, summary judgment, if
> appropriate, shall be entered against the adverse party.

FED.R.CIV.P. 56(e); see also Burke v. Gould, 286 F.3d at 517; 10B CHARLES ALAN WRIGHT &

ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2739 (3d ed. 2004).  Since plaintiff

has failed to comply with the Local Rules of this Court, defendant's Statement of Material Facts is

deemed to be admitted.

### C.  Equal Pay Act Claim

The defendant moves for summary judgment on plaintiff's Equal Pay Act ("EPA")

claim on the ground that jurisdiction properly lies in the Court of Federal Claims.  See Def. Mot.

at 7-8.  Where a court lacks subject matter jurisdiction, the proper course of action is to dismiss the

claim under Rule 12(b)(1) of the Federal Rules of Civil Procedure or, as in this case, to transfer it

to a court that does have jurisdiction, not to grant a motion for summary judgment.  Summary

judgment represents a decision on the merits, which courts may render only after jurisdiction has

been established.   See Kirkham v. Societe Air France, 429 F.3d 288, 293 (D.C. Cir. 2005).

"Seeking summary judgment on a jurisdictional issue . . . is the equivalent of asking a court to hold

that because it has no jurisdiction the plaintiff has lost on the merits. This is a nonsequitur." Id.

(quoting Winslow v. Walters, 815 F.2d 1114, 1116 (7th Cir. 1987)).  The Court therefore will first

analyze whether it has jurisdiction over plaintiff's Equal Pay Act claim.

Federal courts are courts of limited jurisdiction, with the ability to hear cases entrusted to them by a grant of power contained in either the Constitution or in an act of Congress. See, e.g., Beethoven.com LLC v. Librarian of Congress, 394 F.3d 939, 945 (D.C. Cir. 2005); Hunter v. District of Columbia, 384 F. Supp. 2d 257, 259 (D.D.C. 2005); Srour v. Barnes, 670 F. Supp. 18, 20 (D.D.C. 1987) (citing City of Kenosha v. Bruno, 412 U.S. 507, 511 (1973)). On a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of establishing that the court has jurisdiction. See Brady Campaign to Prevent Gun Violence v. Ashcroft, 339 F. Supp. 2d 68, 72 (D.D.C. 2004). Once a court establishes that it lacks jurisdiction, it cannot proceed with a claim. See Steel Co. v. Citizens for a Better Env., 523 U.S. 83, 94 (1998) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.") (quoting Ex Parte McCardle, 7 Wall. 506, 514 (U.S. 1868)).

The EPA prohibits employers from paying lower wages to employees of one sex for jobs requiring equivalent skill, effort and responsibility. See 29 U.S.C. § 206(d). All EPA claims brought in district court must satisfy the jurisdictional requirements of 28 U.S.C. §§ 1491 (the "Tucker Act") or 1346(a)(2) (the "Little Tucker Act"). "Section 1346(a)(2) confers concurrent jurisdiction in district court and the Claims Court for civil actions against the United States based on the Constitution, acts of Congress or agency regulations for amounts not exceeding $10,000. See 28 U.S.C. § 1346(a)(2). Jurisdiction for monetary claims against the United States exceeding $10,000 lies exclusively with the Claims Court. See 28 U.S.C. § 1491." Doe v. U.S. Dept. of Justice, 753 F.2d 1092, 1101 (D.C. Cir.1985); see also Weber v. Hurtgen, 297 F. Supp. 2d 58, 62 (D.D.C. 2003).

The plaintiff seeks back pay, court costs, and attorneys' fees, as well as compensatory damages in the amount of $300,000, far above the jurisdictional limit of the Little Tucker Act.  See Compl. at 18.  Indeed, plaintiff concedes in his opposition brief that the Court lacks jurisdiction over his claim because of the $10,000 jurisdictional limit, and requests that the Court transfer the EPA claim to the Court of Federal Claims.  See Pl. Opp. at 2.  Since the Court does not have jurisdiction over this claim, it will grant plaintiff's request to transfer the claim to the United States Court of Federal Claims.  See, e.g., De Leon v. England, No. Civ.A. 02-0473 (EGS), 2003 WL 21767504, at *2 (D.D.C. Feb. 20, 2003) (transferring EPA claim to Court of Federal Claims where amount in controversy exceeded $10,000).

### D.  Title VII Discrimination Claims

#### 1.  Standard of Review

To survive a motion for summary judgment on a Title VII employment discrimination claim, a plaintiff must first introduce evidence to support a *prima facie* case of discrimination, demonstrating that: (1) he is a member of a protected class; (2) he has suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination.  See Czekalski v. Peters, 475 F.3d at 364; Stella v. Mineta, 284 F.3d 135, 145 (D.C. Cir. 2002); Brown v. Brody, 199 F.3d 446, 452 (D.C. Cir. 1999).  Plaintiff satisfies the first element because he is African-American and therefore is a member of a protected class.  See Carter v.

George Washington Univ., 387 F.3d 872, 879 (D.C. Cir. 2004).[2]  Thus, the issue is whether plaintiff

can satisfy the remaining two elements.

An adverse employment action is "a significant change in employment status, such

as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a

decision causing significant change in benefits."  Broderick v. Donaldson, 437 F.3d 1226, 1233

(D.C. Cir. 2006).  An adverse action has occurred "when an employee experiences materially

adverse consequences affecting the terms, conditions, or privileges of employment or future

employment opportunities such that a reasonable trier of fact could find objectively tangible harm."

Holcomb v. Powell, 433 F.3d at 902 (quoting Forkkio v. Powell, 306 F.3d 1127, 1130-31 (D.C.

Cir. 1999)).

Plaintiff alleges that he suffered from adverse employment actions when defendant:

(1) failed to increase his signing authority on grants and cooperative agreements on May 30, 2002;

(2) denied his formal request to receive an accretion-of-duties promotion to the GS-13 level on

June 24, 2002; and (3) refused to competitively select him for a GS-14 Financial Management

Specialist position on May 14, 2002.  See Compl. at 1; see also Def. Mot. at 2 n.1.  The Court will

analyze each of the allegations individually.

2.  Denial of Increase in Signing Authority

Plaintiff contends that defendant discriminated against him by failing to grant his

request for an increase in his signing authority on grants and cooperative agreements from $100,000

---

[2]     Plaintiff's sex discrimination claim must be evaluated under a slightly different
standard because men, as opposed to women, are not in a protected class.  Plaintiff's sex reverse-
discrimination claim is discussed *infra* at 16.

to $1,000,000 on May 30, 2002.  See Compl. at 1.  This statement is somewhat misleading because

plaintiff misstates the nature of the request that he made.  Plaintiff sent an e-mail to Ms. Allen

requesting an increase in signing authority from $100,000 to a range of between $500,000 and

$1,000,000.  See Exh. Z to Def. Mot. (Pl.'s E-mail to Fannie Allen on March 4, 2002).  Ms. Allen

contends that the office practice was for GS-12s to gain authority up to $500,000 and for GS-13s to

gain signing authority up to $1 million or above.  See Allen Decl. at 9:21 - 9:24.  At the time of the

request in May 2002, plaintiff was a GS-12 level employee and therefore was only eligible for an

increase in signing authority up to $500,000.  Ms. Allen did grant an increase in plaintiff's signing

authority to $500,000, which was approved in May 2003, approximately one year after plaintiff

made his request.   See id. at 10:23 - 10: 29; Pl. Depo. III at 21:7 - 21:13.

        Defendant argues that Mr. Hunter did not suffer from an adverse action because the

one-year delay does not constitute an adverse action, as it did not hinder plaintiff's professional

development or his ability to do his job in the meantime.  See Def. Mot. at 11-12.  Defendant points

to the fact that plaintiff acknowledged that a Grant Specialist's signing authority did not limit the

dollar value or complexity of the grants he could administer.  See id. at 12 (citing Pl. Dep. II

at 16:17 - 17:16).  As defendant points out, plaintiff testified that even when his signing authority

was only $100,000, he still was able to administer multi-million dollar grants by having his Team

Leaders sign off on final grant documents.  See Pl. Depo. II at 16:17 - 17:16.  There is evidence in

the record that an increase in plaintiff's signing authority would not be sufficient in and of itself for

him to obtain a promotion to the GS-13 level.  See Allen Decl. at 10:12 - 10:14.

         As noted, an adverse employment action is a "significant change" in employment

status, such as hiring, firing, failing to promote, reassignment with significantly different

responsibilities, or "a decision causing significant change in benefits.'" Broderick v. Donaldson, 437 F.3d at 1233; Taylor v. Small, 350 F.3d 1286, 1293 (D.C. Cir. 2003) (both quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)).  An adverse action occurs when an employee "experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm."  Holcomb v. Powell, 433 F.3d at 902 (quoting Forkkio v. Powell, 306 F.3d at 1130-31).  It must be more disruptive to the conditions of employment than a mere inconvenience or an insignificant alteration in job responsibilities.  Without more, "purely subjective injuries, such as dissatisfaction with a reassignment, public humiliation, or loss of reputation, are not adverse actions[.]"  Holcomb v. Powell, 433 F.3d at 902.  The courts firmly resist intervening in grievances that would result in "judicial micromanagement of business practices."  Russell v. Principi, 257 F.3d 815, 818 (D.C. Cir. 2001) (quoting Mungin v. Katten, Muchin & Zavis, 116 F.3d 1549, 1556 (D.C. Cir. 1997)); see also Brodetski v. Duffey, 141 F.Supp.2d 35, 44 (D.D.C. 2001) (citations omitted) ("courts cannot be wheeled into action for every workplace slight, even one that was possibly based on protected conduct").

The Court is unable to conclude that the delay in the increase of plaintiff's independent signing authority is an adverse employment action.  Plaintiff was within the range of signing authority for employees at his grade.  See Allen Decl. at 9:21 - 9:24.  He was able to administer more complex grants by having his Team Leaders sign off on final grant documents.  See Pl. Depo. II at 16:17 - 17:16.  The delay in the increase in the level of his signing authority simply was not "a significant change in employment status" or "a decision causing significant change in benefits."  Broderick v. Donaldson, 437 F.3d at 1233 (internal quotations and citations omitted).

Plaintiff therefore cannot meet the second element of an employment discrimination claim because there was no adverse employment action taken against him.[3]

### 3.   Denial of Accretion-of-Duties Promotion to GS-13 Level

In Taylor v. Small, 350 F.3d 1286, 1294 (D. C. Cir. 2003), the D.C. Circuit addressed a claim similar to plaintiff's here – that he should have received an increase in grade and salary based on the level of his responsibilities.  As the Court noted there, the traditional McDonnell Douglas test "does not fit" a claim that a plaintiff should have received an increase in grade and salary based on the level of his responsibilities.  See id.  To make out a *prima facie* case of discriminatory failure to promote under these circumstances, "the plaintiff must show that she sought and was denied a promotion for which [he] was qualified, and that other employees of similar qualifications . . . were indeed promoted at the time the plaintiff's request for promotion was denied."  Taylor v. Small, 350 F.3d at 1294 (quoting Bundy v. Jackson, 641 F.2d 934, 951 (D.C. Cir. 1981)).

---

[3]        Recently, in Czekalski v. Peters, 475 F.3d 360, the D.C. Circuit held that a reassignment, change in title, or change in duties may constitute an adverse employment action even if those changes are not accompanied by a change in grade or pay.  The plaintiff in Czekalski, however, while maintaining the same salary, grade level and benefits, was laterally transferred from a position in which she oversaw 260 federal employees and fifty separate programs, and had an annual budget of $400 million, to a position where she supervised fewer that ten employees, worked on one program and did not have a budget.  See id. at 364-65. The Czekalski plaintiff offered evidence that the defendant's reasons for demoting plaintiff were "nothing more than back-pedaling."  Id. at 367.  Under those circumstances, a jury could reasonably conclude that defendant's action constituted an adverse action.  No such circumstances exist in the present case – plaintiff was not transferred nor did his job responsibilities decrease in any way.  Rather, there was only a delay in the increase in his signing authority.

Plaintiff has not established that any employee of similar qualifications outside his protected class received a promotion at the time his request was denied. When Ms. Allen denied plaintiff's request for a promotion to GS-13 on June 24, 2002, Mr. Hunter was *the only GS-12* in the Grants Division. See Pl. Depo. II at 55:19 - 55:22. Thus, there were no other employees who were similarly situated.

Plaintiff attempts to characterize Joyce Love (African-American female) and Phyllis Swann (African-American female) as similarly situated individuals who were promoted when he was denied promotion. See Pl. Opp. at 15; Pl. Depo. I at 116:6 - 116:13. Plaintiff concedes, however, that he was not eligible for promotion when defendant promoted Ms. Love and Ms. Swann to the GS-13 level in 2000. See Pl. Opp. at 15 ("Ms. Allen attempted to upgrade female employees at a time when Plaintiff was not eligible."). Ms. Love and Ms. Swann had the required time in grade for promotion to GS-13 in 2000 while plaintiff did not. See Taylor v. Small, 350 F.3d at 1295 (plaintiff failed to demonstrate that other employees were similarly situated where she had only been in grade GS-11 for slightly more than a year whereas the two selectees had been in grade GS-11 for ten years). Finally, plaintiff admitted in his deposition that Ms. Love, Ms. Swann, Ms. Stinson and Ms. Ahern all had "much more experience" than he did. See Pl. Depo. at 99:1 - 99:17; see also Exh. 12 to Pl. Opp (Appraisal Review of Donald. S. Hunter, Sr.) at 5 (in appraisal review, Mr. Castro referred to plaintiff as being "relatively inexperienced in comparison with most other officers in the Grants Division."). Because there were no similarly situated employees who were promoted when plaintiff's request for promotion was denied, plaintiff cannot establish a *prima facie* case of discriminatory failure to promote. The Court therefore will grant summary judgment for defendant on this claim.

4.   Failure to Select Plaintiff for GS-14 Financial Management Specialist

Plaintiff alleges that defendant's failure or refusal to competitively select him for a GS-14 Financial Management Specialist position on May 14, 2002 was discriminatory.  See Compl. at 1.  This claim has no merit.  Plaintiff was not selected for the position because he did not meet the time-in-grade requirement at the next lower grade.  See Pl. Depo. I at 163:15 - 163:19.  At the time, plaintiff did not have *any* time in grade at the GS-13 level, and thus could not be eligible for the higher GS-14 level position.  See id. at 164:4 - 164:22.  Plaintiff himself testified that the agency was "correct" in finding him ineligible for the GS-14 position.  See id. at 164:23 - 164:25.  Plaintiff also could not name anyone who discriminated against him with respect to this decision.  See id. at 224:25 - 226:7.  Since plaintiff's own statements acknowledge that no one discriminated against him, plaintiff concedes that his claim cannot succeed.  The Court therefore will grant summary judgment for defendant on this claim.[4]

5.   Sex Discrimination Claim

Plaintiff also alleges that he has been discriminated against on the basis of his sex. See Compl. at 1.  Because plaintiff belongs to the male majority, his claim is one of reverse discrimination, and the test for discrimination therefore is somewhat different.  See Mastro v. Potomac Electric Power Co., 447 F.3d 843, 851 (D.C. Cir. 2006); Harding v. Gray, 9 F.3d 150, 153 (D.C. Cir. 1993).  Once a majority-plaintiff has established the three elements of the McDonnell Douglas framework, *see supra* at 10, he must also show "additional background circumstances

---

[4]        The GS-14 claim is dependent on the failed accretion of duties promotion claim. See Pl. Opp. at 16.

[that] support the suspicion that the defendant is that unusual employer who discriminates against the majority." Mastro v. Potomac Electric Power Co., 447 F.3d at 851 (quoting Harding v. Gray, 9 F.3d 150, 153 and Parker v. Baltimore & Ohio R.R., 652 F.2d 1012, 1017 (D.C. Cir. 1981)). This requirement "is not designed to disadvantage the [majority] plaintiff, but means simply that in our society, where reverse discrimination is the exception, [majority] plaintiffs must show more than the mere fact that they are [male] before an adverse employment action against them will raise an inference of discrimination." Mastro v. Potomac Electric Power Co., 447 F.3d at 851 (internal quotations and citations omitted) (collecting and citing cases). There are two general categories of evidence that constitute the kind of "background circumstances" referenced in Mastro and Harding. See id. "The first is evidence indicating that the particular employer has some reason or inclination to discriminate invidiously against [the majority group]." Id. (internal quotations and citations omitted). "The second category is evidence indicating that there is something 'fishy' about the facts of the case at hand that raises an inference of discrimination." Id. (internal quotations and citations omitted). Plaintiff has not shown evidence falling in either category and therefore has not met his burden.[5]

      Plaintiff asserts that the Grants Division is an "old girls" network where women are systematically preferred over men. See Pl. Opp. at 16-17. Plaintiff, however, has not established any evidence of collusion between Ms. Allen and the four female GS-13s (Ahern, Stinson, Love, and Swann) to exclude men from career advancement. In addition, Benjamin Castro is Ms. Allen's

---

[5]     Even if the Court had determined that plaintiff had met the test for reverse discrimination claims, his sex discrimination claims would fail nonetheless, as he has not suffered an adverse employment action. See supra at 13-16.

own supervisor and concurred with her decision to deny plaintiff a GS-13 promotion.  <u>See</u> SMF

¶ 42.  It would be unusual for Mr. Castro, a man, to belong to or condone such a "girls network."

   In addition, plaintiff notes that the Bureau of Educational and Cultural Affairs

employs only four African-American males among a total of 350 employees.  <u>See</u> Pl. Opp. at 4.  A

plaintiff may include data showing that the defendant employs members of the plaintiff's class at

rates far below their numbers in the applicant pool and the general population.  <u>See</u> <u>Aka v. Wash.</u>

<u>Hosp. Ctr.</u>, 156 F.3d at 1295 n. 11; <u>Simpson v. Leavitt</u>, 437 F.Supp.2d 95, 103 (D.D.C. 2006).

Taken alone, however, plaintiff's data is inconclusive.  The statistics do not shed light on how many

qualified men applied for positions at the agency relative to how many were hired or how many men

in total are employed at the agency (as opposed to just African-American men).  Since plaintiff has

not adequately shown that defendant discriminates against the majority class, his sex discrimination

claim cannot succeed.  The Court concludes that plaintiff has not presented evidence from which a

reasonable jury could find for him, and therefore will grant summary judgment for defendant on this

claim.

III.  CONCLUSION

For the reasons set forth herein, the Court will grant summary judgment for

defendant on the Title VII claims and will transfer plaintiff's EPA claim to the United States Court

of Federal Claims, which has exclusive jurisdiction over it.

An Order consistent with this Opinion will issue this same day.


/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  March 26, 2007